[Civ. No. 7233. Second Appellate District, Division One.—April 22, 1932.]

KENNETH H. KEHLOR, Respondent, v. CHESLEY FINANCE COMPANY (a Corporation), Appellant.

Fickeisen & Richardson and J. E. Haley for Appellant.

Ralph W. Evans for Respondent.

HOUSER, J.—The salient facts upon which the judgment herein and the ensuing appeal depend are that, some four years after the defendant corporation was organized, and during all of which time it had been regularly conducting its business at a profit, it caused an assessment to be levied upon the outstanding paid-up capital stock of the corporation, for the asserted purpose of "conducting business". In response to such assessment, plaintiff and his assignors paid the same "under protest" and thereupon brought an action to recover from the corporation the amount of money thus paid, together with legal interest thereon. From a judgment in favor of plaintiff, the defendant appeals to this court.

The first point suggested by appellant as a sufficient reason for a reversal of the judgment is, that the evidence adduced on the trial of the action was insufficient to sustain the finding of fact made by the trial court, that at the time when the assessment in question was levied "the defendant corporation was conducting business at a profit and had assets of its own in form and amount sufficient and ample to continue conducting its business at a profit, and that at the time of the levy of the assessment in controversy . . . there existed no necessity for additional funds to pay expenses, conduct business, or pay debts of the defendant corporation".

The second point presented by appellant likewise is addressed to the question of the insufficiency of the evidence, and concerns a related finding of fact made by the trial court, to the effect ''that the said assessment was not levied for the purpose of paying expenses, conducting business, or paying debts''.

Although not entirely without conflict from other evidence, or all-inclusive in its scope, nor even not without what might appear to be qualifying or modifying conditions—supporting such findings of fact, among other statements which appear in the testimony given by respective witnesses, may be found the following:

The assessment was levied on July 27, 1928, at a time when the corporation had a ''liquid working capital'' of $23,000; from the inception of the organization of the corporation which occurred in 1924, and ''up until the early part of June, 1928, . . . dividends had been earned on the preferred stock of the appellant corporation. . . . During the month of June, 1928, it earned a profit of $1,172.12, and during the month of July, 1928, it earned a net profit of $770.20.'' Furthermore, the appellant corporation lent to the Metropolitan Finance Corporation a total of $35,000 between June 7, 1928, and July 31, 1928; of which amount $10,000 was lent on June 7, 1928; $10,000 was lent on July 12, 1928; $5,000 on July 26, 1928; and $10,000 on July 31, 1928. It was also shown that the loans thus made by appellant to the Metropolitan Finance Corporation ''were all funds that were not working''; in other words, such loans were all funds of the appellant which it did not require in the operation of its business. Furthermore, it was disclosed that the president of the appellant corporation owned the controlling interest in the Metropolitan Finance Corporation, in which latter corporation he was also a director; that the number of directors of the appellant corporation consisted of five persons, of whom the said president was one, his wife was a second member thereof, and another person, who was identified as the vice-president of the Metropolitan Finance Corporation, was a third member of the board of directors of the appellant corporation. A financial statement and balance sheet of the appellant corporation as of June 30, 1928, showed a net surplus of $12,856.15; a similar statement and balance sheet as of date July 31, 1928, showed

a net surplus of $13,628.35. It also appeared that, although the par value of the preferred, as well as the common, stock of the corporation was ten dollars per share, four days after the assessment had been levied, the president of the appellant corporation bought from it 700 shares of the preferred capital stock and 700 shares of the common capital stock of the corporation for the sum of $7,000; and shortly thereafter, notwithstanding the previous loans shortly theretofore made by the appellant corporation to the Metropolitan Finance Corporation, the appellant corporation borrowed from a bank the sum of $15,000. However, from the testimony given by the president of the appellant corporation, it not only appeared that the loans made by it to the Metropolitan Finance Corporation were all funds which the appellant did not require in the operation of its business, but that such loans were collectible as, if and when the money represented thereby was needed or demanded by the appellant corporation. As was testified by the president of the corporation:

"Q. When did you make any of those loans? A. As the Chesley Company has more funds than they can put out on regular automobile contracts and that is— Q. By that you mean that when the Chesley Finance Company had funds that were not working you loaned them to the Metropolitan Finance Corporation of California? A. Yes, sir. . . . Q. Oh, I see. And they repaid? A. They are repaid, or as they needed it. In other words, if they would have a run of business today for needing half of that, even though the loans are for ninety-day periods, they could get it."

Furthermore, the president of the appellant corporation testified that the purpose of the assessment in question was to get money with which *"to increase the business"*; or, according to an admission made by him to the plaintiff, "the object of the assessment was . . . to build up the assets of the company and put them in a position where they could make more money".

Considering the foregoing testimony and evidence, it becomes clear that it was ample to sustain the findings of fact to which objection is here made.

As it existed at the time the assessment was levied, section 331 of the Civil Code provided: "The directors of

any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form and to the extent provided herein.''

Since by the findings of fact made by the trial court ''the said assessment was not levied for the purpose of paying expenses, conducting business or paying debts'', it should naturally follow that the judgment should be affirmed. But, in that connection, the appellant contends that the levying of an assessment rests within the discretion of the board of directors, and that unless in that regard it be affirmatively shown that such discretion was abused, the courts are unauthorized to disturb the action of the board of directors by which such assessment was levied. That such position assumed by the appellant is ordinarily sound may be conceded; but manifestly the operation of such principle of law depends for its accuracy of application upon the preliminary prerequisite that the assessment be levied for one or more of the purposes permitted by the terms of the statute, under the provisions of which the original and enabling authority of the board of directors of the corporation to levy any assessment is conferred. In other words, should an assessment be levied for an unauthorized purpose, no foundation would have existed for the exercise of discretion. It is only when the object of the assessment actually falls within one or more of the specified purposes, as expressed in the language of the statute, that the board of directors is empowered to levy an assessment; and when it appears that an assessment has been levied for any other purpose, neither the good faith of the board of directors in levying the assessment, nor in the end, the probability that the action of the board of directors in that regard was for the best interests of the corporation, nor any other reason, may be permitted to prevail over the timely and legal objection of a protesting stockholder. No discretion is vested in the board of directors to determine the *fact* of whether the conditions, or either of them, provided by the statute are, or either of them is, actually present. In that regard, in levying an assessment, the board of directors must act at its peril; or, at any rate, the corporation must assume

the risk. The question of whether the facts were such as to justify the board of directors in levying the assessment is one of ultimate fact to be determined by the court from the evidence. ■ In the instant case, founded upon substantial supporting evidence, by its findings of fact the trial court having expressly declared that "the said assessment was not levied for the purpose of paying expenses, conducting business, or paying debts", the conclusion must be that the board of directors had no authority to levy the assessment in question.

It becomes unnecessary to consider other points presented on the appeal. .

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.